UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ROCHELLE LUCILLE CAREY, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:13-CV-40 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY OFFICE, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Rochelle Lucille Carey, appearing *pro se*, filed a complaint seeking reversal of the decision of the defendant Commissioner of Social Security ("Commissioner") for the purpose of receiving Supplemental Security Income (SSI). Plaintiff filed a brief in support of her application on June 6, 2013 and Defendant filed a response brief in support of the Commissioner's determination on July 12, 2013 (D.E. 5, 6). For the reasons discussed below, it is respectfully recommended that the Commissioner's decision be affirmed and Plaintiff's cause of action be dismissed.

## BACKGROUND

Plaintiff filed an application for SSI on October 30, 2009, alleging an onset date of January 15, 2008 (Tr. 106-112; D.E. 3-6 at 2-8). The application was denied at all levels of the administrative process (Tr. 48-51, 57-60, 7-17, 1-3; D.E. 3-5 at 2-5, 11-14, 13-3 at 8-18, 2-4). Plaintiff filed this civil action seeking reversal of the ALJ decision on February 15, 2013 (D.E. 1).

Plaintiff alleges that she was unable to work prior to October 30, 2009 because of hypothyroidism, depression and "myofascial," which presumably is myofascial pain (Tr. 118; D.E. 3-7 at 7). Her reported symptoms include headaches, fatigue, forgetfulness and pain in her neck, spine, left side, muscles and bones (Tr. 135-136, 158; D.E. 3-7 at 24-25, 47). Prior to the onset of her disability, Plaintiff worked in a retail store, in a photo enhancement store and at a motorcycle repair shop (Tr. 125; D.E. 3-7 at 14).

## MEDICAL EVIDENCE

Plaintiff sought an evaluation for depression in December 2007. She reported sadness of mood, decreased interest in life, poor energy, concentration and appetite and fragmented sleep. She also believed her husband was a serial killer. She saw blood stains all over the house and had seen bloody water in the dishwasher. She reported her beliefs to the police multiple times (Tr. 173; D.E. 3-8 at 2). She was working as a bookkeeper but anticipated losing that job. The longest she had worked in one place was approximately one-and-a-half years because she and her husband moved a lot (Tr. 174; D.E. 3-8 at 3).

During the exam Plaintiff was alert and maintained eye contact. Her mood was sad and her affect blunted. No tangentiality or loosening was noted, but she had delusions regarding her husband harming other people. Her cognition was grossly intact but her insight and judgment appeared to be poor. She was diagnosed with a psychotic

disorder of non-specific origin and assessed with a GAF of 55.[1] She was prescribed Zoloft and Risperdal (Tr. 174; D.E. 3-8 at 3).

At a follow-up visit in January 2008 Plaintiff reported that her mood was better but that she thought the Risperdal was "messing up her thinking." She again talked about her husband being a serial killer. She showed a full range of affect. Her thought processes were at times circumstantial. The Risperdal and Zoloft dosages were increased (Tr. 176; D.E. 3-8 at 5).

Plaintiff received care from a family medical practice from September 2006 through February 2010, although the dates of the visits are not noted in the records. She was given prescriptions for Zoloft and Resteril for anxiety (Tr. 309-310; D.E. 3-9 at 4-5). She also was prescribed Ambien and Buspar (Tr. 313; D.E. 3-9 at 8). Plaintiff reported that she had previously been on thyroid medication for hypothyroidism and Synthroid was prescribed for her (Tr. 318-319, 321-322; D.E. 3-10 at 5-6, 8-9). She complained of generalized musculoskeletal pain as well as pain and discomfort in her hands and feet. She could not afford to have X-rays done (Tr. 321; D.E. 3-10 at 8). She also reported episodes of fatigue, mood swings and memory loss (Tr. 324; D.E. 3-11 at 3).

In September 2009 Plaintiff complained of hurting all over which was worse with activity and at the end of the day. She also reported headaches, insomnia, significant fatigue and numbness and tingling in her hands. Examination showed some neck

---

[1] The Global Assessment of Functioning ("GAF") scale rates overall psychological functioning on a scale of 0-100. A GAF of 51-60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Ed., 2000.

stiffness, but the rest of her examination was unremarkable. She was assessed with polyarthralgia, myalgia and fatigue (Tr. 183-185; D.E. 3-8 at 12-14).

In February 2010, Plaintiff reported arthritic symptoms involving multiple sites, visual disturbances, ataxia, twitching, a tingling sensation and headaches. She also had some chest pain and discomfort, which was not relieved by rest or nitroglycerin. On examination she had some soft tissue swelling of her lower extremities (Tr. 202-204; D.E. 3-8 at 31-33). An MRI of her brain was normal (Tr. 200; D.E. 3-8 at 29).

Plaintiff underwent a consultative psychological evaluation on February 24, 2010. She was tearful and said it was a struggle to even to check the mail because of pain. She reported pain in her neck and spine and headaches. She did not use a cane but reported difficulty with standing, walking and bending. Pain sometimes kept her from being able to bathe or dress. She reported that her hand and legs sometimes moved on their own and that her eyes vibrated and she becomes disoriented. She was prescribed medications which she could not afford and took over-the-counter medication for pain relief which helped for a short period of time (Tr. 208; D.E. 3-8 at 37).

Her mental status examination was normal except that she was tearful and cried frequently and her mood was generally dysthymic. It was believed that much of her current mood was related to pain and her mood was expected to improve with better pain management. She was diagnosed with a major depressive disorder, mild, recurrent (Tr. 210; D.E. 3-8 at 39).

In August 2010 Plaintiff reported seeing worms in her stool. She completed two courses of mebendazole and later lab work showed no ova or parasites. Her active

problems were listed as hypothyroidism, localized joint pain, myalgia and myositis, numbness and sleep disturbances (Tr. 344; D.E. 3-13 at 9). She had a normal gait and a full range of motion (Tr. 345; D.E. 3-13 at 10). In September Plaintiff again said she saw worms in her stool, that she could feel a worm in her belly and had a worm in her neck (Tr. 331; D.E. 3-12 at 6). A X-ray and a CT scan of her abdomen were both normal (Tr. 327-328, 339-340; D.E. 3-12 at 2-3, 3-13 at 4-5). A test for giardia was negative (Tr. 341; D.E. 3-13 at 6). An MRI showed a bulging disk in her neck at C6-C7 (Tr. 331; D.E. 3-12 at 6).

## **HEARING TESTIMONY**

Plaintiff, represented by counsel, attended a hearing on September 1, 2011. The medical expert (ME) summarized Plaintiff's mental health records and stated that she did not meet or equal any of the listings for a mental impairment (Tr. 26-28; D.E. 3-3 at 27-29).

Plaintiff testified that she was 51, had earned a GED and had last worked as a bookkeeper in January 2008. Right around that time her husband committed suicide and the company she was working for went out of business (Tr. 30-31; D.E. 3-3 at 31-32).

Plaintiff was having trouble with her memory and said she was approaching a green light once and could not remember whether it meant "stop" or "go." When it turned red she still did not know what to do and it was not until a car pulled out from the side road that she remembered she was supposed to stop on red (Tr. 31-32; D.E. 3-3 at 32-33). She has also tried to flip lights switches when the light was already on and was

frightened when she saw a screwdriver and did not know what it was for. Another time she did not know what a laundry basket was (Tr. 32; D.E. 3-3 at 33).

She attempted to work in February 2011 and obtained a job as a cashier at a liquor store. She was in so much pain that she could not do much more than sit and she was terminated from the position (Tr. 32-33; D.E. 3-3 at 33-34). In July 2011 she saw a doctor who referred her to a neurologist, but she had not yet had an appointment with the neurologist (Tr. 33; D.E. 3-3 at 34). She also had been to the emergency room because she had a burning sensation in her face and felt it pulling downward (Tr. 33-34; D.E. 3-3 at 34-35). She had migraines weekly for which she took Excedrin Migraine. On a typical day she would sit on the couch and watch television. She had trouble sleeping at night. The pain she experienced interfered with her ability to concentrate and complete tasks (Tr. 34; D.E. 3-3 at 35).

Her son moved in with her because he was worried about her. She also worried about herself because of her memory issues and because she had chest pain and trouble breathing (Tr. 35-36; D.E. 3-3 at 36-37). She went to work at the liquor store even though she was in pain because they were completely out of money and had nothing to eat (Tr. 36-37; D.E. 3-3 at 37-38). Her boss told her he was going to fire her because she sat in the corner and was not doing her job (Tr. 37; D.E. 3-3 at 38).

Plaintiff's son testified that he had lived with her for a year-and-a-half and saw her do things like put milk in the cabinet and forget where she put other things. She also forgot appointments and would forget that they had watched a movie together. When driving, she would sometimes go the wrong way and would not stop at lights. Several

times she had forgotten to put the car in park (Tr. 39-40; D.E. 3-3 at 40-41). She also had left water running and had left the refrigerator door open. These things happened on a weekly basis, and more often if she were having headaches. Sometimes her speech was incoherent (Tr. 40; D.E. 3-3 at 41).

The vocational expert (VE) testified that Plaintiff's past work as a bookkeeper was sedentary and skilled and her work as a receptionist was sedentary and semi-skilled (Tr. 42; D.E. 3-3 at 43-44). The administrative law judge (ALJ) described to the VE a person who was limited to light work with the additional limitations of occasional crouching, kneeling and crawling and no climbing of ropes, ladders or scaffolds. The person would need to avoid smoke, dust and fumes and would be capable of some detailed work, but more in the nature of routine, repetitive type detailed work. The VE stated that Plaintiff could do her past relevant work as a receptionist, answering the phone, taking messages and greeting the public, but not the work as a bookkeeper (Tr. 42-43; D.E. 3-3 at 43-44). If the person could stay on task and complete a task only eighty percent of the time, she would not be able to sustain employment (Tr. 43; D.E. 3-3 at 44).

## **LEGAL STANDARDS**

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

L.Ed.2d 842 (1971). The burden has been described as more than a scintilla, but lower than a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988)(citations omitted).

In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present. But the Court does not reweigh the evidence, try the issues de novo or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)(citations omitted). It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and others who have observed him and (4) the claimant's age, education and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)(citations omitted).

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520. The claimant bears the burden of

proof on the first four steps with the burden shifting to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

## **DISCUSSION**

In the opinion issued on December 30, 2011, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 30, 2009. He further found that she had severe impairments, namely hypothyroidism, poly-osteoarthritis, a history of asthma and cervical spine degenerative disc disease. The ALJ found that Plaintiff's mental impairments were not severe. The ALJ further found that none of Plaintiff's impairments met or medically equaled a listed impairment. He next determined that Plaintiff had the residual functional capacity (RFC) to perform light work, with the additional limitations of only occasional kneeling, crouching, and crawling and no climbing of ladders, ropes or scaffolds. In addition, she could not work around dust, fumes or smoke and was limited to simple and detailed tasks, but no complex work. Based on the foregoing, the ALJ found that Plaintiff could return to her past relevant work as a phone clerk/receptionist and thus was not disabled (Tr. 12-17; D.E. 3-3 at 13-18).

Plaintiff objects to these findings and states that in September 2013 her arm involuntarily jerked so hard that she suffered a tear to her rotator cuff and also that in December 2013 she was diagnosed with fibromyalgia. She argues that when she appeared at the ALJ hearing she already was suffering from fibromyalgia although it had not yet been properly diagnosed. She asks the Court to consider her fibromyalgia when reviewing the decision of the ALJ.

### A. Submission of New Evidence

Plaintiff did not submit any new evidence, but indicates that she has new evidence relevant to her claim and asks the Court to consider it. A district court does not issue factual findings on new evidence, but is limited to determining whether to remand for the consideration of newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463 (5th Cir. 1989). In order to be considered, evidence submitted after the close of the administrative proceeding must be new and material and good cause must be shown for the failure to incorporate such evidence into the record in a prior proceeding. *Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir. 1983). To meet the materiality requirement, there must be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him. *Id.* (citing *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)). In addition, new evidence must relate to the time period for which benefits were denied, and must not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *Haywood*, 888 F.2d at 1471 (citing *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

Assuming Plaintiff has evidence that she suffered a severe muscle spasm that injured her rotator cuff and also that she was diagnosed with Fibromyalgia two years after the ALJ hearing, it does not warrant a remand. First, the evidence is too remote in time from the ALJ hearing and decision to be relevant to the ALJ's determination. Also, regarding the evidence of involuntary movement of her arm, although Plaintiff had reported some twitching prior to the hearing, she did not report any severe muscle

spasms. Thus, at most, the involuntary spasm that injured her rotator cuff represented a deterioration of her condition. In addition, even if Plaintiff had been diagnosed with Fibromyalgia at the time of the hearing, the ALJ found that she was capable of light work. The ALJ noted that Plaintiff complained of aches and pains from 1996 through 2009 and that she had some trigger point tenderness of the paraspinal muscles and upper arms on examination (Tr. 15; D.E. 3-3 at 16). However, other than decreased lateral flexion of her neck, she had normal movement in her back, hips, lower extremities, shoulders, elbows and hands (*Id.*) Other exams showed no localized joint pain and were otherwise unremarkable. She had a normal gait and grossly intact neurological responses (Tr. 16; D.E. 3-3 at 17). The ALJ found that despite her subjective complaints and the testimony of her son, the medical evidence indicated that Plaintiff was capable of doing light work and thus was not disabled.

     Plaintiff has not shown that even if she had been diagnosed with Fibromyalgia at the time of the ALJ hearing that the ALJ would have reached a different conclusion regarding her ability to do light work. Accordingly, Plaintiff has failed to show that her case should be remanded for consideration of the new evidence.[2]

---

[2] Plaintiff is, of course, free to file a new application for SSI based on the new evidence.

## **RECOMMENDATION**

The Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence and it is respectfully recommended that the determination be affirmed.

Respectfully submitted this 7th day of October, 2013.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).